BING & Co.'s SUCCESSORS *v.* UNITED STATES (No. 779).[1]

FIGURED UPHOLSTERY GOODS.

    Figured cotton panels of various sizes made on a Jacquard loom and designed to be affixed to screens are not manufactures of cotton cloth, but are more aptly described as Jacquard figured upholstery goods, and they are dutiable as such under paragraph 326, tariff act of 1909.

United States Court of Customs Appeals, March 26, 1912.

APPEAL from Board of United States General Appraisers, G. A. 7276 (T. D. 31882).

[Affirmed.]

*Churchill & Marlow* for appellants.

*William L. Wemple,* Assistant Attorney General (*Thomas J. Doherty* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The merchandise consists of figured cotton panels of various sizes made on a Jacquard loom. They are intended to form the panels of screens used in rooms or to be hung upon the walls thereof for decoration. Upon the official samples the designs produced represent human figures, trees, other objects, and landscapes, and are said to, and apparently do, represent copies of pictures. They are also referred to in the evidence as tapestries and tapestry panels.

The collector assessed the merchandise for duty under paragraph 326 of the tariff act of 1909, which is as follows:

326. Curtains, table covers, and all articles manufactured of cotton chenille, or of which cotton chenille is the component material of chief value, tapestries, and other Jacquard figured upholstery goods, weighing over six ounces per square yard, composed wholly or in chief value of cotton or other vegetable fiber; any of the foregoing, in the piece or otherwise, fifty per centum ad valorem.

The importers protested against this assessment, claiming the merchandise to be dutiable under paragraph 332 as articles made from cotton cloth or manufactures in chief value of cotton, not specially provided for, or under the provisions for cotton cloth, dyed, colored, stained, painted, or printed, dutiable according to value, weight, and thread count, as provided in paragraphs 315 to 319 of the same act.

The Board of General Appraisers overruled the protests and affirmed the decision of the collector.

Other claims were made in the original protests, but those relied upon here are as above stated.

The issue is whether these articles are tapestries or other Jacquard figured upholstery goods within the meaning of paragraph 326.

The importers claim that it was the intention of Congress to include under that paragraph textiles used for distinctly utilitarian purposes,

[1] Reported in T. D. 32365 (22 Treas. Dec., 538).

such as curtains, furniture covering, wall covering, etc., and to exclude therefrom products intended for framing in a screen or to be used for adornment or ornamentation, as a painting or picture, which, from the evidence and the appearance of the exhibits in this case, would seem to be the principal and appropriate use for this importation. They also claim that the term "and other Jacquard figured upholstery goods," as used in the paragraph, has the effect of limiting the meaning of "tapestries" to such as are upholstery goods, which, as above stated, the importers contend these are not.

The record shows that these exhibits are produced in substantially the same manner as like fabrics designed for the utilitarian purposes referred to by the importers, the main difference apparently being in the designs upon the fabrics. There seems to be no dispute that they are tapestries, unless the meaning of that word in the paragraph is limited, as claimed by the importers.

The board found that a preponderance of the evidence sustained the Government's contention that the term—

"Upholstery goods," as used in the wholesale trade throughout the country, signifies all textile fabrics of that character used for interior household decoration and would include the articles covered by these protests.

The evidence is somewhat voluminous and we have carefully examined it. A recital of the same seems unnecessary, for we are clear that, although there is some conflict between witnesses on the question, it fairly sustains the finding of the board.

In addition to this, and as the board also concluded, it seems that the ordinary meaning of the term "upholstery goods" does not differ from such proven commercial designation and would therefore include the merchandise in question.

The word "upholster" seems to have taken its origin from the word "upholder" or "upholdster," now obsolete in that sense, but which formerly, among other things, meant a dealer especially in small wares, an undertaker, an upholsterer, and by various processes of evolution has now come to mean to furnish with hangings, curtains, carpets, etc. "Upholstery" is now defined as:

(1) Furniture covered with textile material, and hangings, curtains, and the like; a general term for all such interior decorations and fittings as are made with textiles. (2) The art or trade of using textiles, leather, and the like in making furniture, decorating an interior, etc. (See Century Dictionary.)

The Standard Dictionary defines "upholstery" as meaning—

(1) Goods or materials used in upholstery. (2) Textile decoration of an apartment.

Other lexicographers give similar meanings to the word.

We think the record in this case establishes that these importations are tapestries and also Jacquard figured upholstery goods within the meaning of paragraph 326.

In view of this conclusion it becomes unnecessary to consider the importers' contention as to the force and effect of the word "other" as used in the paragraph, because the merchandise being found to be Jacquard figured upholstery goods in fact, whether the word "tapestries" in the paragraph is, by force of the term which follows it, likewise limited to upholstery goods is immaterial.

It is also unnecessary to consider the point made by the importers as to the refusal of the board to permit certain cross-examination of a witness, as appears of record, for purposes of impeachment, because, in view of the construction we place upon the statute and of the conceded facts in the case, the desired cross-examination, if permitted, could not change the result.

We have considered the importers' claim that the legislative history of paragraph 326, which is new to the tariff law, tends to support their above claims, but there does not seem to be such ambiguity in the statute as requires that aid to its interpretation.

The judgment of the Board of General Appraisers is *affirmed.*