CARTER & SON *v.* UNITED STATES (No. 1520).[1]

JACQUARD FIGURED UPHOLSTERY GOODS.

The merchandise consists of nettings, all of which are Jacquard figured, and the relevant paragraphs in tariff act of 1913 are 258 and 358. "Jacquard figured upholstery goods" in paragraph 258 restricts the operation of the term to goods whose chief use is as upholstery goods, the precise character of these upholstery goods being there defined, and accordingly the description applies to articles that might otherwise be appropriately designated nets or nettings under paragraph 358.

United States Court of Customs Appeals, May 21, 1915.

APPEAL from Board of United States General Appraisers, G. A. 7685 (T. D. 35139).

[Affirmed as to part; reversed as to part.]

*Walden & Webster* for appellants.

*Bert Hanson*, Assistant Attorney General (*Charles E. McNabb*, assistant attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

This case presents two issues. The merchandise involved consists of nettings, which are all Jacquard figured. There is one class of goods, numbered 35135, which a preponderance of evidence shows to be goods the predominating use of which is for curtains. The case involves a construction of that portion of paragraph 258 of the tariff act of 1913 which provides for "tapestries, and other Jacquard figured upholstery goods, composed wholly or in chief value of cotton or other vegetable fiber," as in contrast with nets and nettings in paragraph 358 of the same act. This for the purpose of determining the classification of item 35135.

The case also involves a construction of the language "all other Jacquard figured manufactures of cotton or of which cotton is the component material of chief value," in competition with the same provision for nets and nettings in paragraph 358.

Dealing first with the articles shown to be chiefly used as curtains, the question is, Are these upholstery goods? In the case of Bing *v.* United States (3 Ct. Cust. Appls., 115; T. D. 32365), the term "upholstery goods" was defined, and referring to the testimony of commercial usage it was said:

As the board also concluded, it seems that the ordinary meaning of the term "upholstery goods" does not differ from such proven commercial designation and would therefore include the merchandise in question.

The court then cited with approval the definitions of "upholstery goods" in the Century Dictionary and the Standard Dictionary in terms broad enough to include all textile decorations of an apartment. The court was then construing the tariff act of 1909, which limited the

---

[1] Reported in T. D. 35475 (28 Treas. Dec., 949).

term "upholstery goods" to such as weighed more than 6 ounces to the square yard. This limitation was eliminated in the tariff act of 1913, which would apparently enlarge rather than narrow the meaning of the term "upholstery goods" as used.

In a very carefully prepared opinion by Cooper, G. A., in T. D. 35320, this provision of the law is reviewed and the conclusion is reached that the expression "upholstery goods" is used in a narrower sense in this act than is given to it by the lexicographers, and as to the force to be given to the fact that the act of 1913 eliminated the words "weighing over 6 ounces per square yard," attention is directed to the fact that when the bill was before Congress the omission of this phrase was referred to, and it was stated that it had been omitted as applied to tapestries and other Jacquard figured upholstery goods "as there was no good reason for retaining this qualifying phrase," and it is suggested that this history attaches a different signification to the change than would otherwise be given to the act by itself. The record does not, however, indicate why it was not necessary to retain this qualifying clause. It may have been an economic reason, which is quite as reasonable as to assume that it was because Congress intended to place a narrower construction upon the term "Jacquard figured upholstery goods" than had previously been given to it by the court. The fact of the omission of these words, therefore, we think should be given the effect which would ordinarily be attributed to that fact, and indicates a purpose to broaden the term "upholstery goods" to include goods of a less substantial character and weight.

The learned general appraiser also was of the opinion that the rule of *ejusdem generis* applied to the phrase "Jacquard figured upholstery goods," and that following, as it does, the particular word "tapestries," and tapestries being of heavy material for draperies and furniture coverings, "upholstery goods" would be limited to goods of a like kind, such as cretonne, chintz, plush, velvet, Utrecht velvet, brocatelle, reps, sateens, etc. For the reason indicated, we think this narrow construction is not open. If the goods fall under the general class of upholstery goods and are Jacquard figured they comply with and would not be excluded by the rule of *ejusdem generis*.

The question is therefore presented whether "Jacquard figured upholstery goods" is a designation which should prevail over the term "nets, nettings." We think it should. The intent appears to be manifest to make the use to which a narrowly prescribed class of goods is devoted the test of its classification. This makes the provision more narrow than the broad term "nets, nettings." In the first place, the articles provided for under this provision must be Jacquard figured; secondly, they must be upholstery; thirdly,

they must be composed wholly or in chief value of cotton or other vegetable fiber, and "any of the foregoing in the piece or otherwise" is provided for. Obviously these provisions must have been intended to invade the other paragraphs of the tariff act and to remove or leave out of such paragraphs the goods answering to this particular and specific description. It describes the goods in the piece, and restricts them to upholstery goods composed wholly or in chief value of cotton, Jacquard figured. We think this provision, which restricts its operation to goods whose chief use is as upholstery goods, the precise and restricted character of such upholstery goods being exactly defined by the terms of the paragraph, brings within its provisions an article which might otherwise be appropriately termed nets or nettings.

The authorities upon this question are cited in the brief of counsel for the importer. The cases are fully reviewed in Meyer *v.* Cadwalader (89 Fed., 963), in a very carefully prepared opinion by Shiras, Judge, sitting in the Circuit Court of Appeals. See also Drakenfeld *v.* United States (2 Ct. Cust. Appls., 512; T. D. 32248); Fink *v.* United States (170 U. S., 584); United States *v.* Klipstein (123 Fed., 996); and United States *v.* Elgin National Watch Co. (5 Ct. Cust. Appls., 336; T. D. 34532).

This leads us to the next question as to whether the provision for "all other Jacquard figured manufactures of cotton or of which cotton is the component material of chief value" is more specific than the provision for "nets, nettings." Without extending this opinion by a full discussion of this question, it will suffice to call attention to the case of Wilson *v.* United States, decided currently herewith. The question is quite different from that presented as to the "Jacquard figured upholstery goods" above. In this clause there is no attempt to define the uses to which the Jacquard figured manufactures are to be put. The general clause under consideration appears to be more in the nature of a catch-all clause, and its provision for manufactures of cotton is broader than the *eo nomine* provision for nets and nettings, and for this reason, more fully elaborated in the opinion of my brother Smith, the opinion of the board, sustaining the assessment of the other articles as nets is *affirmed*, and as to 35135 *reversed*.