UNITED STATES *v.* MILLS & GIBB (No. 1888).[1]

1. CONSTRUCTION, PARAGRAPH 258, TARIFF ACT OF 1913—JACQUARD FIGURED UPHOLSTERY GOODS.

The common and usual signification of the term "upholstery goods" includes nets or nettings in the piece. The term has never been proven in this court to have any commercial meaning different from its common meaning. The provision for "Jacquard figured upholstery goods, composed wholly or in chief value of cotton, * * * in the piece or otherwise," paragraph 258, tariff act of 1913, was intended by Congress to cover Jacquard figured cotton nets or nettings in the piece notwithstanding the provisions of paragraph 358 for nets, nettings, laces, etc., of whatever yarns, threads, or filaments composed.

2. CONSTRUCTION, PARAGRAPH 258, TARIFF ACT OF 1913—LEGISLATIVE SANCTION— "UPHOLSTERY GOODS."

In reenacting unrestricted in paragraph 258, tariff act of 1913, the term "upholstery goods" from paragraph 326, tariff act of 1909, after having had its attention specifically directed to the decision of the United States Court of Customs Appeals that the term included all the interior textile decorations and fittings of apartments, Congress must be presumed to have used it in this sense.

3. CONSTRUCTION—CUSTOMS ADMINISTRATIVE PRACTICE, FORCE OF.

A customs administrative practice may be invoked as an aid in determining the interpretation to be given to ambiguous statutes, but it is only an aid to such interpretation proper to be considered when the statute is capable of that construction, and is of force only when it has become a settled rule of conduct, long continued, and practically uniform. Such a practice contrary to the decision of the United States Court of Customs Appeals, either before or after such decision, has no force.

4. EVIDENCE, RELEVANCY.

Inasmuch as the tariff act of 1913 does not classify upholstery goods or fabrics according to the industry which produced them, evidence that the making of nettings and laces is a separate industry from that which produces certain other upholstery goods and tapestries has no relevancy to an issue as to whether Jacquard figured cotton nets or nettings should be classified as Jacquard figured upholstery goods under paragraph 258 or as nets or nettings under paragraph 358.

5. EVIDENCE, RELEVANCY.

Evidence that when the tariff act of 1913 was pending in Congress and paragraph 326 of the act of 1909, the predecessor of paragraph 258 of the act of 1913, was under consideration, the parties who made representations to the Ways and Means Committee on the subject of upholstery goods were not interested in the industry producing laces or nettings or in the product of lace or netting machines, but were interested in other upholstery goods, is not relevant to an issue as to whether certain Jacquard figured cotton nets or nettings are classifiable as Jacquard figured upholstery goods under paragraph 258 or as nets or nettings under paragraph 358.

6. JACQUARD FIGURED NETTINGS.

Jacquard figured nets or nettings, wholly or in chief value of cotton, imported in the piece, are dutiable under paragraph 258, tariff act of 1913, as Jacquard figured upholstery goods, and not under paragraph 358, as nets or nettings.

United States Court of Customs Appeals, May 22, 1918.

APPEAL from Board of United States General Appraisers, G. A. 8119 (T. D. 37645).

[Affirmed.]

---

[1] T. D. 37667 (34 Treas. Dec., 503).

*Bert Hanson*, Assistant Attorney General (*Martin T. Baldwin*, special attorney, of counsel), for the United States.

*Curie, Smith & Maxwell* (*Thomas M. Lane* of counsel) for appellees.

[Oral argument Apr. 19, 1918, by Mr. Baldwin and Mr. Lane.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The merchandise here is Jacquard figured nets or nettings, wholly or in chief value of cotton, imported in the piece and assessed for duty at the rate of 60 per cent ad valorem under the provisions of paragraph 358 of the tariff act of 1913 for "nets, nettings, * * * all of the foregoing of whatever yarns, threads, or filaments composed."

The importers in their protest and argument here rely upon the claim that it is dutiable as Jacquard figured upholstery goods "composed wholly or in chief value of cotton" at the rate of 35 per cent ad valorem under paragraph 258 of the same act.

It is stipulated that the merchandise here has the same uses and is of the same character in all material respects as that involved in the case of United States *v.* Mills & Gibb (7 Ct. Cust. Appls., 388; T. D. 36964), the record in which case, including all the testimony, evidence, stipulations, and exhibits therein, it is agreed may be incorporated in, considered as, and may become a part of the record in this case.

It is also stipulated that certain of the merchandise, if made up into window curtains, would in fact be lace window curtains made on the Nottingham lace-curtain machine such as would be dutiable under paragraph 265; that certain other of the merchandise, if made up into window curtains, would in fact be lace window curtains such as would be dutiable under paragraph 358.

It is further stipulated that on and prior to October 3, 1913, there were and still are bought and sold in and imported into this country the following classes of nets and nettings, among others, to wit:

(1) Nets and nettings not Jacquard figured, made on the Nottingham lace-curtain machine.

(2) Nets and nettings not Jacquard figured and not made on the Nottingham lace-curtain machine.

(3) Nets and nettings, both plain and Jacquard figured, used chiefly for purposes other than the making of curtains or the textile decorations of apartments.

It may be noted that in United States *v.* Mills & Gibb, supra, the Government undertook, but as both the Board of General Appraisers and this court held, failed to establish that the merchandise was not commercially known as upholstery goods. while in the case at bar no such claim is made.

The Government insists that we were in error in the first Mills & Gibb case, as well as in some of the others below cited, which involve various aspects of the broad question as to the application of the

two above paragraphs and that a review thereof in connection with certain facts and considerations not presented in those cases will warrant and result in a reversal of our conclusion in the first Mills & Gibb case. We have considered one or both the paragraphs invoked here in Carter & Son v. United States (6 Ct. Cust. Appls., 253; T. D. 35475); Downing & Co. v. United States (6 Ct. Cust. Appls.. 447; T. D. 35984); United States v. Snow's United States Sample Express Co. et al. (6 Ct. Cust. Appls., 477; T. D. 36120); United States v. Snow's United States Sample Express Co. (7 Ct. Cust. Appls., 312; T. D. 36872); United States v. Snow's United States Sample Express Co., suit 1827, recently decided (8 Ct. Cust. Appls., 351; T. D. 37611), and in Bing & Co.'s Successors v. United States (3 Ct. Cust. Appls., 115; T. D. 32365), construed paragraph 326 of the act of 1909, the predecessor of the present paragraph 258.

These cases considered as a whole in substance hold that the common and usual signification of the term "upholstery goods" includes fabrics like those involved in this case; that the term has not been proven to have any commercial meaning different from its common meaning; that the provision for Jacquard figured upholstery goods, composed wholly or in chief value of cotton, in the piece or otherwise, in paragraph 258 was intended by Congress to cover the merchandise here involved notwithstanding the provisions of paragraph 358 for nets, nettings, laces, etc., of whatever yarns, threads, or filaments composed.

The Board of General Appraisers in the instant case, following the cited decisions of this court, sustained the importers' claim as to the classification of the merchandise.

We consider it unnecessary here to review and restate in extenso the conclusions reached in those cases or the reasoning adopted to support the same, but refer thereto for a complete presentation thereof.

In substance, the Government claims here as in the earlier cases that the invoked provision of paragraph 358 eo nomine describes the merchandise here and therefore controls its classification and points out that the views we have adopted lead to the anomalous result that plain nettings not Jacquard figured pay a higher rate of duty than a more valuable similar product which is Jacquard figured.

As to all of this it may be said that it was fully considered in the former cited cases and determined adversely to the Government.

At the hearing before the board the Government offered to show certain facts not involved in the earlier cases, evidence tending to prove which was excluded upon the importers' objection, and the next and the real question is therefore whether the board erred in excluding the same and incidentally thereto the question as to the effect thereof if admitted. In considering this phase of the case we assume

that if the offered evidence had been received, it would have shown the facts to be as stated in the offers. The Government, as already mentioned, contends that if received and considered, this evidence would require a different conclusion than that reached in the first Mills & Gibb case. We gather from the assignments of errors and the argument that the excluded evidence is embraced in the following subdivisions:

(1) That under the tariff act of 1909 Jacquard figured cotton laces, nettings, trimmings, and ornaments weighing over 6 ounces per square yard and used for making curtains were imported and uniformly classified by tariff officers under the provision for laces, nettings, trimmings, and ornaments in paragraph 349 of that act and not as Jacquard figured upholstery goods weighing over 6 ounces per square yard in paragraph 326 thereof.

(2) That the making of nettings and laces is a weaving industry separate and distinct from that which produces certain other upholstery goods and tapestries and that the nettings here are a product of the first mentioned industry.

(3) That when the tariff act of 1913 was pending in Congress and paragraph 326 of the act of 1909 was under consideration, the parties who made representations to the Ways and Means Committee on the subject of upholstery goods were not interested in the industry producing laces or nettings or in the product of lace or netting machines but were interested in other upholstery goods.

We are of opinion that the excluded evidence, assuming it would have established the claimed facts, would not warrant or justify a reversal of the conclusions we have heretofore adopted in the cases cited, supra.

In Bing & Co.'s Successors *v.* United States, supra, decided by the board in September, 1911, and by this court in March, 1912 (and so before the tariff act of 1913 was enacted), it was held that the term "upholstery goods" in said paragraph 326 was broad enough to include all the interior textile decorations and fittings of apartments. Therein the contention of the Government, made upon evidence that the wholesale trade dealing in such merchandise so understood the term, was upheld, as was also the finding of the board that the common meaning of the term did not differ from the proven commercial meaning. When, in 1913, paragraph 326 of the act of 1909 was under consideration before the Ways and Means Committee, this decision was specifically called to the attention of that committee, and it was represented that it had settled the question as to the meaning of the term "upholstery goods," and in the same connection it was pointed out that there were numerous varieties of upholstery goods made of different materials, some Jacquard figured and others not. (See hearings before the Committee on Ways and

Means, tariff bill of· 1913, p. 3617.) The fact that Congress was made aware of this decision and made no change in the paragraph except to omit the limitation that only such upholstery goods as weighed over 6 ounces per square yard should be dutiable thereunder, not only is consistent with but suppoits the view that it accepted our interpretation of the term "upholstery goods" and extended its application, all of which was pointed out in the Carter case, supra.

If it were shown that the Treasury Department had before the decision in the Bing case adopted or thereafter persisted in a contrary view as to the meaning of the term "upholstery goods" that fact would not be controlling upon the meaning of the term or establish thereby a meaning contrary to that expressed in the Bing case. Robinson v. Lundrigan (227 U. S., 173, 178); United States v. Dickson (15 Pet., 40 U. S., 141, 161); The Dollar Savings Bank v. United States (19 How., 86 U. S., 227, 237); Pacific Creosoting Co. v. United States (1 Ct. Cust. Appls., 312, 315; T. D. 31407).

A customs administrative practice may be invoked as an aid in determining the interpretation to be given to ambiguous statutes, but it is only an aid to such interpretation, proper to be considered when the statute is capable of that construction, and is of force only when it has become a settled rule of conduct long continued and practically uniform. Robertson v. Downing (127 U. S., 607); Merritt v. Cameron (137 U. S., 542, 551, 552), and cases last above cited.

The statute of 1909 was in force for less than five years and we do not think the offered evidence would establish a sufficiently uniform, long-continued, or notorious administrative practice to make a case of presumed legislative adoption thereof. There is no express ruling or regulation of the Treasury Department on the subject to which our attention has been called, and the offered evidence goes no further than that three customs officers, examiners, had, so far as they were concerned, applied paragraph 326 in connection with paragraph 349 of the act of 1909 in accordance with the interpretation thereof now claimed by the Government.

It is possible that an inducement to such action may be found in the proviso to paragraph 349, which does not appear in paragraph 358 of the present act, to the effect that no article composed wholly or in chief value of any one or more of the materials named in the paragraph should pay a less rate of duty than the rate imposed upon the materials or goods of which the same was composed, but whatever may have been the reason for the action of the examiners, we do not think it has any controlling effect here.

Neither are we able to comprehend how the fact that the making of nettings and laces is a separate industry, economically considered, can affect the issue. The statute nowhere indicates any intention to make the classification of merchandise as upholstery goods de-

pendent upon the particular industry employed in their production or to regard as controlling their economic status. Had Congress intended to separate upholstery goods or fabrics for tariff purposes into two classes, depending upon the industry which produced them, it would be expected that appropriate language to create that distinction would be employed. To now read such an intent into the statute would be judicial legislation.

Upon the particular question raised by the assignment of error in the exclusion of evidence that all the parties who were represented at the hearings before the Ways and Means Committee were manufacturers of loom-woven goods and not interested in laces or nettings or in the products of lace or netting machines, we are somewhat at a loss to understand the Government's contention.

The record as to the proceedings before the committee so far as it is proper to consider the same speaks for itself. There is nothing therein which leads us to conclude that the committee was not fully apprised as to the nature of the business engaged in by those who appeared before it, nor does the Government so claim. We must first look to the language of the statute to ascertain its meaning, and in this connection we may sometimes examine the relevant legislative procedure preceding its enactment. Suppose it be assumed that the offered fact is true and that the committee was ignorant thereof, no presumption arises therefrom that Congress did not intend to include in the paragraph all upholstery goods of the class under consideration. Indeed, if it might be assumed or shown that in fact Congress or the committee was deceived or misled on the question or misunderstood the effect of its action, even then we would have no authority to substitute for what *in fact* it did, what we might think it ought to or would have done, had none of the assumed conditions been present.

This whole case may perhaps be summed up substantially as follows: Both paragraphs, 258 and 358, cover the imported merchandise and it is true, as claimed by the Government, that under the construction we have given thereto an apparent incongruity of rates may result. That, however, has often happened in tariff legislation, and the remedy, if one should be awarded, is for the legislative branch of the Government.

On the other hand, it is not at all certain that such apparent incongruity of rates exists to the extent inferentially claimed by the Government. As pointed out by the importers, the terms "nets" and "nettings," as we have construed the law, may well be applied to all plain and figured nettings, including those that are Jacquard figured, not used for upholstery purposes, which merchandise, the importers claim, covers the greater bulk of imported nettings, and the record here shows that there are plain nettings which are more

expensive than others that are Jacquard figured. There is, too, much force in the importers' claim that the construction urged by the Government would limit paragraph 258, so far as Jacquard figured upholstery goods of cotton are concerned, very largely to the tapestries especially named therein. However this may be, an incongruity of rates in some instances does not to our mind justify a conclusion which defeats what we think is the clear intention of Congress to segregate under paragraph 258 such as these upholstery goods figured by the Jacquard attachment and composed wholly or in chief value of cotton. In this connection it is obvious that there are upholstery goods which would fall under paragraph 358, both because not Jacquard figured and also because not made wholly or in chief value of cotton.

The doctrine of stare decisis is invoked by the importers, and our decision might well have been rested thereon, but partly because of the unquestioned sincere belief of the Government that we have committed error and also because if so we desire to correct it, we have carefully considered the whole subject matter, with the result that we find nothing that induces us to depart from the views expressed in the earlier cases.

The judgment of the Board of General Appraisers is therefore *affirmed.*