TAUSEND ET AL. *v.* UNITED STATES (No. 2954)[1]

United States Court of Customs Appeals, December 5, 1927

*Allan R. Brown* for appellants.

*Charles D. Lawrence*, Assistant Attorney General (*James R. Ryan*, special attorney, of counsel), for the United States.

[1] T. D. 42490.

324

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The merchandise imported in the case now before us was classified as Jacquard woven upholstery cloths under paragraph 909 of the Tariff Act of 1922. It was claimed in the protest to be dutiable under paragraph 921 of said act as articles made of cotton cloth and manufactures of cotton. A further claim was made under paragraph 912 of said act, but this claim is not insisted upon in this court and will be treated as abandoned. The court below, after granting a rehearing, overruled the several protests involved and the importer has appealed.

The pertinent paragraphs are as follows:

909. Tapestries, and other Jacquard woven upholstery cloths, Jacquard woven blankets and Jacquard woven napped cloths, all the foregoing, in the piece or otherwise, composed wholly or in chief value of cotton or other vegetable fiber, 45 per centum ad valorem.

921. All articles made from cotton cloth, whether finished or unfinished, and all manufactures of cotton or of which cotton is the component material of chief value not specially provided for, 40 per centum ad valorem.

Six samples of the goods in question were introduced and are before us. Exhibit 1 of protest 67006–G is a Jacquard figured table cover, about 58 by 62 inches in size, and surrounded on all sides by a cord fringe, attached through openings in the edges of the cover and then knotted into a fancy design. The remaining samples are offered in connection with protests 141840–G, 148810–G, and 98643–G, and are as follows: Exhibit 1 is a table cover, 44 by 44 inches; Exhibit 2 is a scarf, 18 by 50 inches; Exhibit 3 is a pillow top, 18 by 22 inches; Exhibit 4 is a table cover, about 52 by 54 inches; and Exhibit 5 is a table cover, about 54 inches square. All are Jacquard figured.

Appellant makes several contentions. It is first argued that while it may be conceded that the goods in question are Jacquard figured, they are not, in fact, Jacquard woven, as provided by said paragraph 909, and that the court below erred in so finding. When witnesses were being heard by the court below, counsel for the importer stated (Rec. p. 26), speaking of the goods in question:

Mr. KLINGAMAN. To settle all disputes, if Mr. Kemp is bothering about Jacquard woven, I don't deny the fact that they are Jacquard woven.

And again (Rec. p. 38):

Mr. KLINGAMAN. I admit that all of these are Jacquard woven, and that they are made of cotton.

If there was any error in this respect, it was induced by the importer, through his counsel. He can not, therefore, be now heard to complain here, on this point, and the merchandise must be taken by this court as, admittedly, Jacquard woven.

Several arguments are made in favor of the position assumed by appellant. They are, in brief, as follows: First, the ordinary meaning of the word "cloths" as used in said paragraph 909 does not include articles made from cloth; they must therefore be classified under said paragraph 921, which specifically includes such articles. Second, blankets are specifically named in said paragraph 909; these being the only finished articles so specifically named therein, by the rule of *expressio unius est exclusio alterius*, all other finished articles are excluded therefrom. Third, the table covers and other articles in question here are not included within the definition of "cloth," as given in paragraph 904 of said act. Fourth, paragraph 258 of the tariff act of October 3, 1913 (the predecessor paragraph of said paragraph 909), provided for "Jacquard figured upholstery *goods.*" When the Congress changed this expression in said paragraph 909 to "Jacquard woven upholstery *cloths*," the congressional intent was to depart from the construction which had theretofore held the word "goods" to include finished articles, and to limit the same by the use of the word "cloths" to material only.

In order to determine the various questions thus presented, it is necessary to give some consideration to the legislative history of the paragraphs now before us. Paragraph 258 of the tariff act of October 3, 1913, is, in part, as follows:

258. Tapestries, and other Jacquard figured upholstery goods, composed wholly or in chief value of cotton or other vegetable fiber; any of the foregoing, in the piece or otherwise, 35 per centum ad valorem.

It will be observed, in comparing this paragraph with paragraph 909 of the Tariff Act of 1922 hereinbefore quoted, that some changes in language were made, viz: The word "figured" was stricken and the word "woven" substituted in the latter statute; the word "goods" was stricken out and the word "cloths" substituted; and the language "Jacquard woven blankets and Jacquard woven napped cloths" was inserted.

Under the evidence in the record and the concessions of counsel, the goods here are Jacquard woven. They are upholstery goods. *Bing* v. *United States*, 3 Ct. Cust. Appls. 115, T. D. 32365; *Carter & Son* v. *United States*, 6 Ct. Cust. Appls. 253, T. D. 35475; *United States* v. *Snow's Express Co.*, 6 Ct. Cust. Appls. 477, T. D. 36120. The designation "Jacquard figured upholstery goods" having been held to be a classification by use, they would have been classifiable under said paragraph 258 of the act of 1913, as such, rather than as articles manufactured of cotton, under the provisions of the same act. *Carter & Son* v. *United States, supra; Downing & Co.*, v. *United States*, 6 Ct. Cust. Appls. 447, T. D. 35984; *Altman* v. *United States*, 11 Ct. Cust. Appls. 102, T. D. 38749. Did the Congress intend, by substituting the word "cloths" for the word

"goods," to narrow this provision and make it extend only to material in the piece and unfabricated into specific articles?

In the first place, if the Congress did so intend, why did it retain the language in the paragraph, "in the piece *or otherwise*"? (Italics ours.) The expression *"or otherwise"* has been uniformly held, in the absence of a legislative intent to the contrary, to mean "or not." *Gartner, Sons & Co.* v. *United States,* 154 Fed. 957; *United Stetes* v. *Vandegrift & Co.,* 4 Ct. Cust. Appls. 226, T. D. 33438; *United States* v. *Chesterton Co.,* 15 Ct. Cust. Appls. 175, T. D. 42232. Therefore, this language, in the absence of any showing of legislative intent to the contrary, must be construed as if it read "in the piece or not." Counsel for appellant argues that this language should be construed to mean "in the piece or cut into lengths." No authorities are cited and no reasons urged for such a construction and we are not justified in departing from a long and well considered line of adjudication to adopt such a view. The meaning, therefore, to be given to this language is, "Jacquard woven upholstery cloths, in the piece or not in the piece," which would, of course, include such articles as those involved here, unless barred by the use of the word "cloths."

Under the well understood rule, a change of language by the legislative body will be construed as evincing a change in legislative intent. *Borden & Riley Paper Co.* v. *United States,* 14 Ct. Cust. Appls. 116, T. D. 41645; *United States* v. *Post Fish Co.,* 13 Ct. Cust. Appls. 155, T. D. 41022. This, however, will not control as against the plain legislative intent, if it can be ascertained. *United States* v. *Stone & Downer Co.,* 274 U. S. 225.

The exact meaning of the Congress in making the suggested change is shrouded in some ambiguity, and, hence, recourse may be had to the record of the proceedings of the Congress in the enactment of this legislation. H. R. 7456, which afterwards became the Tariff Act of 1922, as introduced in the House of Representatives, used language substantially as it appears in the law, including the use of the word "cloths." In the report of the Committee on Ways and Means made to the House July 6, 1921, in the discussion of Schedule 9, cotton manufactures, of the bill, the following statements are made (House Report 248, Part 1, 67th Cong., 1st sess.):

The law now in force was so worded, probably through inadvertance, that lace curtains, instead of taking the lace duties, were included in the upholstery paragraph. This error has been avoided by a change of language and the upholstery paragraph now includes only Jacquard woven cloth. The advanced duties which have always been carried in this paragraph have the effect of giving a special rate for the more elaborate Jacquard designs, which are principally used in upholstery goods when made of cotton. * * *

*The phraseology of the schedule has been carefully gone over by the Tariff Commission and meets with its approval. The arrangement and wording is considered to be an improvement on any previous act.* (Italics ours.)

Here, it will be observed, the committee states that the changes of language in question were submitted to and made with the approval of the United States Tariff Commission. It thereupon becomes important to inquire what the Tariff Commission may have suggested to the committee relative to this language, if anything. On January 31, 1922, the Tariff Commission transmitted to the Senate Committee on Finance, to which committee H. R. 7456 had been referred, a summary of tariff information relative to said bill. The hearings of said committee began July 25, 1921, and were concluded January 9, 1922. H. R. 7456 was reported by said Finance Committee to the Senate on April 11, 1922. It therefore appears that said summary was before the said committee and the Senate at the time of reporting and passing said bill. The following statement appears in said summary in connection with a discussion of paragraph 908 (afterwards 909) of said bill (p. 872):

#### JACQUARD-WOVEN UPHOLSTERY CLOTHS IN THE PIECE OR OTHERWISE

*Description and uses.*—The term "Jacquard-woven upholstery cloths" includes two classes of cloth: (1) Heavy fabrics, such as tapestries, brocades, brocatelles, damasks, armures, and "pocket cloths," which are used not only for covering furniture, walls, seats in railway coaches and in inclosed automobiles, but as wall hangings, portières, pillow tops, table covers, and mantel and bureau scarfs; and (2) light-weight clipped fabrics, such as madras muslin, used mainly as curtains. The paragraph, as worded, includes only cloths of cotton or other vegetable fibre, woven on a Jacquard loom and intended for upholstery use. These Jacquard-woven upholstery cloths usually have patterns of much larger size and more elaborate character than those used in Jacquard-woven cloths for dress use. The words "or otherwise" after "in the piece" extends the meaning to include tapestry panels and also curtains and other articles made from Jacquard-woven upholstery cloths.

It is manifest, therefore, that the United States Tariff Commission was of opinion that the language of paragraph 908 (afterwards 909) of H. R. 7456, was amply sufficient to include all such articles as those involved here. As the House Committee on Ways and Means had submitted this language to said Tariff Commission and were acting in conjunction and harmony with it, the natural presumption must follow that the said committee, also, was of the same opinion.

When the Senate Committee on Finance reported said bill, the following statements were made among others, as to Schedule 9, cotton manufactures (Senate Report No. 595, 67th Cong., 2d sess.):

In paragraph 908 the words "Jacquard-woven blankets and Jacquard-woven napped cloths" have been inserted. A provision for this class of merchandise was omitted from the House bill, but as it is similar to tapestries and other Jacquard woven upholstered cloths, it should be classified in this paragraph. * * *.

In paragraph 919 the words "and all other articles and fabrics, by whatever name known, plain or Jacquard figured, wholly or partly manufactured for any use whatsoever," are inserted to insure the imposition of the duty therein pro-

vided on all lace window curtains, nets and nettings, pillow shams, and bed sets made on the Nottingham lace-curtain machine.

*The courts have held that a tariff provision which describes an article by reference to its use prevails over every other description of the article in a tariff act.*

The committee considers this proposed amendment to be necessary to prevent articles made on the Nottingham lace machines from being assessed under other provisions of the tariff bill carrying a higher rate of duty, where articles made on the Nottingham lace machine may be referred to by a description of their use.

The italics are ours. Said paragraph 919 became paragraph 920 of the said tariff act.

It is impossible to escape certain conclusions from a reading of these various excerpts. In the first place, the House Committee on Ways and Means was adopting the language "Jacquard-woven upholstery cloths" in order to exclude lace curtains, which it seemed to desire to be classified as laces. Second, the Senate Committee on Finance was inserting the language "Jacquard-woven blankets and Jacquard-woven napped cloths" in order that these articles might be included therein, as well as "tapestries and other Jacquard-woven upholstery cloths," which it thought to be already included in the language of the bill, as it came to it from the House.

In making this latter change the Senate committee will be presumed to have had in mind the decisions of the Board of General Appraisers, where it had been held that such Jacquard figured cotton blankets were classifiable as blankets made of cotton, under paragraph 264 of the tariff act of October 3, 1913, and not as Jacquard figured upholstery goods, under said paragraph 258. *In Re Gardner & Co.*, 27 Treas. Dec. 280, T. D. 34819; *In Re Rosenstern Co.*, 28 Treas. Dec. 404, Abstract 37475.

Lastly, it is evident that the Senate committee was cognizant of the course of adjudication holding the expression "Jacquard figured upholstery goods," as it appeared in said act of 1913, to be a classification by use, and thus one prevailing over any other equally specific provision of law. In order to withdraw articles made on the Nottingham lace machine from the provision "Jacquard-woven upholstery cloths," it thought it necessary to incorporate the strong and specific language of paragraph 919 (afterwards 920); otherwise, such articles might have been classified thereunder. There was some justification for this view in *Carter & Son v. United States*, 6 Ct. Cust. Appls. 253, T. D. 35475, and cases therein cited, where this court held Jacquard figured nets and nettings, used chiefly for curtains, to be classifiable, not as nets and nettings, but as Jacquard figured upholstery goods.

From a consideration of these matters it is evident the congressional intent was not to limit the extent of paragraph 909 by the inclusion of the words "Jacquard-woven blankets and Jacquard-woven napped cloths," or to make the doctrine of *expressio unius est exclusio alterius*

applicable, but rather was an endeavor to make the paragraph more comprehensive by the inclusion of articles which it feared might not otherwise be classified thereunder.

Paragraph 904 of the Tariff Act of 1922 gives the following definition of the words "cotton cloth":

904. The term cotton cloth, or cloth, wherever used in this schedule, unless otherwise specially provided for, shall be held to include all woven fabrics of cotton, in the piece.

It is argued this limits the meaning of the word "cloths" in said paragraph 909 to material in the piece. We are unable to agree with this conclusion. It will be observed this definition of cloth shall apply *"unless otherwise specially provided for."* Said paragraph 909 has otherwise specially provided, for therein it is expressly stated that the provision therein made relative to "cloths" shall prevail, whether the cloths are *"in the piece or otherwise."*

The cause of appellant has been very carefully and ably presented to us and has merited and received our close attention. We are, however, unable to adopt appellant's views, and the judgment of the court below is therefore *affirmed.*