UNITED STATES *v.* V. W. DAVIS, SINAI KOSHER SAUSAGE FACTORY (No. 3560) [1]

[1] T. D. 46087.

United States Court of Customs and Patent Appeals, December 5, 1932

*Charles D. Lawrence*, Assistant Attorney General (*Peter A. Abeles* and *Ralph Folks*, special attorneys, of counsel), for the United States.
*James R. Ryan* for appellee.

[Oral argument October 12, 1932, by Mr. Folks and Mr. Ryan]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Second Division, in reappraisement proceedings, affirming a decision of the trial judge sitting in reappraisement, adjudging the appraisements involved, seven in number, were void.

The merchandise involved consists of pickled beef prepared by the koshering process and was imported under the Tariff Act of 1922 at Ranier, Minn., from Winnipeg, Manitoba. It was packed in barrels and shipped in carload lots.

In its decision the Second Division of the Customs Court made the following findings of fact:

1. That the collector failed to designate the statutory number of barrels required to be opened and examined for purposes of appraisement.

2. That the acting appraiser examined less than 10 per cent of the barrels in the importation, and therefore did not comply with the requirements of said section 499,

and concluded as a matter of law that the purported appraisements were null and void, thus affirming the decision of the trial judge.

The Government contends that there was no mandatory duty upon the collector to designate the statutory number of barrels to be opened and examined for the purposes of appraisement, and, second, that all provisions of law were complied with by the appraising officers in the appraisement of the merchandise herein involved.

The pertinent portions of the sections of the Tariff Act of 1922 bearing upon the above contentions read as follows:

SEC. 501. REAPPRAISEMENT.—The decision of the appraiser shall be final and conclusive upon all parties unless a written appeal for a reappraisement is filed with or mailed to the Board of General Appraisers [now the United States Customs Court] by the collector within sixty days after the date of the appraiser's

report, or filed by the consignee, or his agent, with the collector within ten days after the date of personal delivery, or if mailed the date of mailing of written notice of appraisement to the consignee, his agent, or his attorney. No such appeal filed by the consignee, or his agent, shall be deemed valid, unless he has complied with all the provisions of this Act relating to the entry and appraisement of such merchandise. * * *

SEC. 499. EXAMINATION OF MERCHANDISE.—Imported merchandise, required by law or regulations made in pursuance thereof to be inspected, examined, or appraised, shall not be delivered from customs custody, except as otherwise provided in this Act, until it has been inspected, examined, or appraised and is reported by the appraiser to have been truly and correctly invoiced and found to comply with the requirements of the laws of the United States. The collector shall designate the packages or quantities covered by any invoice or entry which are to be opened and examined for the purpose of appraisement or otherwise and shall order such packages or quantities to be sent to the public stores or other places for such purpose. Not less than one package of every invoice and not less than one package of every ten packages of merchandise, shall be so designated unless the Secretary of the Treasury, from the character and description of the merchandise, is of the opinion that the examination of a less proportion of packages will amply protect the revenue and by special regulation permit a less number of packages to be examined. The collector or the appraiser may require such additional packages or quantities as either of them may deem necessary. If any package is found by the appraiser to contain any article not specified in the invoice and he reports to the collector that in his opinion such article was omitted from the invoice with fraudulent intent on the part of the seller, shipper, owner, or agent, the contents of the entire package in which such article is found shall be liable to seizure, but if the appraiser reports that no such fraudulent intent is apparent then the value of said article shall be added to the entry and the duties thereon paid accordingly. If a deficiency is found in quantity, weight, or measure in the examination of any package, report thereof shall be made to the collector, who shall make allowance therefor in the liquidation of duties.

SEC. 500. DUTIES OF THE APPRAISER, ASSISTANT APPRAISER, AND EXAMINER.—
(a) It shall be the duty of the appraiser under such rules and regulations as the Secretary of the Treasury may prescribe—

(1) To appraise the merchandise in the unit of quantity in which the merchandise is usually bought and sold by ascertaining or estimating the value thereof by all reasonable ways and means in his power, any statement of cost or cost of production in any invoice, affidavit, declaration, or other document to the contrary notwithstanding;

(2) To ascertain the number of yards, parcels, or quantities of the merchandise ordered or designated for examination;

(3) To ascertain whether the merchandise has been truly and correctly invoiced;

(4) To describe the merchandise in order that the collector may determine the dutiable classification thereof; and

(5) To report his decisions to the collector.

*　　　*　　　*　　　*　　　*　　　*　　　*

(d) It shall be the duty of an examiner to examine and inspect the merchandise and report the value and such other facts as the appraiser may require in his appraisement or report, and to perform such other duties as may be prescribed by rules and regulations of the Secretary of the Treasury or the appraiser.

(e) The Secretary of the Treasury is authorized to designate an officer of the customs as acting appraiser at a port where there is no appraiser. Such acting appraiser shall take the oath, perform all the duties, and possess all the powers of an appraiser.

Sec. 488. The collector within whose district any merchandise is entered shall cause such merchandise to be appraised.

It appears from the invoices and entries in the record that the car numbers and initials were stated, but there is no statement of the number of barrels in each car or any statement of the marks, numbers or symbols upon the barrels. Five of the entries were accompanied by invoices indicating one quality in each shipment and one unit price. One entry indicated three and the other entry indicated two qualities of beef. The summary sheets attached to the invoices show that the deputy collector designated all of the shipments for examination by placing the car number of each shipment in the space where designated packages are required to be indicated. There was no statement in the invoices or entries that the beef imported was koshered beef. The record shows that the invoice prices represented prevailing market prices of unkoshered beef, and that the additional cost of slaughtering and preparing the imported koshered beef was from 1 to 1½ cents per pound. In view of this fact the appraiser, some time after the goods were released from customs custody, advanced the entered value by adding the additional cost of koshering the beef.

We do not think there is any substantial evidence to support the finding of the court below that the collector failed to designate the statutory number of barrels required to be opened and examined for purposes of appraisement. The record conclusively shows that there was nothing in the invoices or consumption entries to indicate the number of barrels of beef in each car; it shows that the collector designated the entire shipment in each case for examination by placing the car number in the space where designated packages are required to be indicated. This was a full compliance with the statute, for section 499, *supra*, specifies only that—

* * * *Not less* than one package of every invoice and *not less* than one package of every ten packages of merchandise, shall be so designated * * *. (Italics ours.)

We think, however, that there is sufficient evidence in the record to sustain the finding of the Second Division that less than ten per centum of the barrels in each importation were examined. The collector having designated all of the merchandise for examination and less than one package of every ten packages of the merchandise having been examined, the question arises whether the examination made was such a noncompliance with the law as to render the appraisements void. In the consideration of this question it is necessary to consider the construction to be given to said section 499 of the Tariff Act of 1922 with respect to whether its provision, specifying that not less than one package of every invoice and not less than one package of every ten packages of merchandise shall be designated by

the collector for purposes of appraisement or otherwise, is mandatory, or directory merely. If this provision is mandatory, then, even though the collector designated all of the merchandise for examination for purposes of appraisement, it would seem that a failure to examine at least one package of every ten packages of merchandise would render an appraisement based on such examination void. Upon the other hand, if this provision is to be regarded as directory merely, then the question would be whether a sufficient examination had been made in the instant case reasonably to determine the character of the merchandise imported.

The Government earnestly contends that, while under the tariff acts prior to the Tariff Act of 1922 similar provisions for the designation of merchandise by the collector were held to be mandatory, under the act of 1922 such provision should be held to be directory merely. In this contention the Government relies especially upon the case of *Erhardt* v. *Schroeder*, 155 U. S. 124, wherein a very similar provision, found in section 2939, Revised Statutes, was held to be directory in classification cases, because in such cases the importer had a right to secure a judicial determination of the proper classification of the merchandise there involved; but in the opinion in that case it was intimated that such provision was mandatory in cases where the value of merchandise was involved, for the reason that in such cases the importer had no right of judicial review of the value found by the appraiser. This court, beginning with the case of *Loeb* v. *United States*, 1 Ct. Cust. Appls. 385, T. D. 31479, has consistently held that similar provisions for the designation of merchandise by the collector for purposes of appraisement were mandatory. The cases were fully reviewed in the case of *Carey & Skinner* v. *United States*, 16 Ct. Cust. Appls. 382, T. D. 43118, and the same rule was later adhered to in the case of *United States* v. *Steffan & Sons*, 18 C. C. P. A. (Customs) 455, T. D. 44702. All of these cases, however, were under tariff acts prior to the Tariff Act of 1922; but in the case of *United States* v. *Gilson Bros.*, 20 C. C. P. A. (Customs) 117, T. D. 45753, a like holding was made with respect to said section 499 of the Tariff Act of 1922. In that case we said:

That the provisions of said section 499 are mandatory with respect to the designation of one package in ten for examination, unless the Secretary of the Treasury has promulgated a special regulation permitting a less number of packages to be examined, as provided in the statute, has been established by this court. *Carey & Skinner* v. *United States*, 16 Ct. Cust. Appls. 382, T. D. 43118; *United States* v. *Jacob Steffan & Sons*, 18 C. C. P. A. (Customs) 455, T. D. 44702.

With respect to this case the Government now calls attention to the fact that the real issues raised by the Government there were: (1) Where the validity of an appraisement by a local appraiser was challenged, whether relief could be secured by way of protest; (2)

whether a special regulation had been issued by the Secretary of the Treasury permitting the examination of a less proportion of packages of the merchandise there involved than is provided for by said section 499. The Government in its brief in the case at bar says:

This court devoted its decision in the *Gilson* case mainly to a consideration of these two points. This was due to the Government's assumption that the importer in that case had failed to show the absence of proper special regulations by the Secretary of the Treasury. The Government brief in that case did not attempt to point out, as it does in the instant case, that the history and provisions of the Tariff Act of 1922 are persuasive of the fact that the designation of packages provision in section 499 was not mandatory. The Government did not proceed in that case (*Gilson Bros.*) upon this point. It rested on the fact, as it believed, that there were sufficient special regulations by the Secretary of the Treasury to justify the holding by this court that there was a legal appraisement. This court may have assumed that the so-called mandatory provision was not controverted by the Government, and in passing on this question in the *Gilson* case, disposed of it in a short paragraph, as follows:

following which is the paragraph hereinbefore quoted.

An examination of the briefs in *United States* v. *Gilson Bros., supra*, discloses the fact that the Government did not there raise the question that is raised here, namely, that under the Tariff Act of 1922 this provision of section 499 should not be considered to be mandatory. We therefore deem it proper to consider the nature of this provision, notwithstanding the statement above quoted from said *Gilson Bros.* case.

It is true, as contended by the Government, that under the Tariff Act of 1922 an importer is afforded a judicial review by appeal to reappraisement of all appraisements made by local appraisers, and it is true that under previous tariff acts the general appraiser and the Board of General Appraisers, upon appeal to reappraisement, might exercise both judicial and inquisitorial powers. They were not limited to a determination of the value of merchandise upon the evidence presented at a formal hearing on the merits, but might estimate the value from information received from other sources. The distinction between prior tariff acts and the Tariff Act of 1922 in this respect was fully considered and discussed by this court in *United States* v. *McConnaughey & Co.*, 13 Ct. Cust. Appls. 112, T. D. 40944. It does not follow, however, that because an importer now may secure a judicial review of appraisements made by local appraisers, said section 499 should be considered to be directory merely, so far as the requirement respecting samples is concerned.

The rule for determining whether a statute is mandatory in a particular case was stated by the Supreme Court in *French* v. *Edwards*, 13 Wall. 506, as follows:

There are undoubtedly many statutory requisitions intended for the guide of officers in the conduct of business devolved upon them, which do not limit their power or render its exercise in disregard of the requisitions ineffectual. Such

generally are regulations designed to secure order, system, and dispatch in proceedings, and by a disregard of which the rights of parties interested can not be injuriously affected. Provisions of this character are not usually regarded as mandatory unless accompanied by negative words importing that the acts required shall not be done in any other manner or time than that designated. But when the requisitions prescribed are intended for the protection of the citizen, and to prevent a sacrifice of his property, and by a disregard of which his rights might be and generally would be injuriously affected, they are not directory but mandatory. They must be followed or the acts done will be invalid. The power of the officer in all such cases is limited by the manner and conditions prescribed for its exercise.

Of course, the intent of Congress, if it can be ascertained, is always controlling in the construction of tariff laws. *United States* v. *Stone & Downer Co. et al.*, 274 U. S. 225; *Tausend et al.* v. *United States*, 15 Ct. Cust. Appls. 323, T. D. 42490. If it appears that Congress intended that this provision of section 499 should be mandatory we must give effect to such intent.

The substance of section 499 was not incorporated in any previous tariff act but was contained in sections 2901 and 2939 of the Revised Statutes. As heretofore stated in reappraisement cases under prior tariff acts, the provisions of these sections have consistently been held by this court to be mandatory, and while it is true that Congress in the Tariff Act of 1922 changed the character of the review in reappraisement cases, there is nothing to indicate that there was any intention that section 499 should be given a different construction in reappraisement cases than had been given to said sections 2901 and 2939 of the Revised Statutes. We think that if Congress had intended that section 499 should be considered to be directory merely, in view of the judicial interpretation of like previous statutes, Congress would have indicated such intention in section 499. It is altogether reasonable to suppose that Congress was of the opinion that the designation of at least one package of every ten packages of merchandise for examination for purposes of appraisement was so important in the interests of the Government, in order that proper revenue might be realized from duties upon importations, that no discretion should be left to the collector to use his judgment as to whether the examination of a less number of packages would be sufficient to protect the interests of the Government.

This view is confirmed by the language of said section 499 itself, wherein it is provided that, when the Secretary of the Treasury is of the opinion that the examination of a less proportion of packages will amply protect the revenue, he may, by special regulation, permit a less number of packages to be examined. Congress having inserted a specific provision in this section vesting this discretion in the Secretary of the Treasury, and in no other, it is unreasonable to suppose that the congressional intent was that a discretion quite as extensive

should be vested by mere implication in any other official, as, for example, in the collector.

Again calling attention to the rule laid down in *French* v. *Edwards, supra,* it is there clearly implied that when a statute is accompanied by negative words importing that the acts required shall not be done in any other manner or time than that designated, it shall be held to be mandatory. The provisions of section 499 last referred to clearly import that merchandise shall not be designated for examination for purposes of appraisement in any other manner or time than that designated and should, we think, be construed as meaning that the collector shall in no case designate less than one package of every ten packages of merchandise for examination for purposes of appraisement unless the Secretary of the Treasury by special regulation permits the examination of a lesser number. We may say in passing that the application of this rule of construction does not appear to have been raised in the case of *Erhardt* v. *Schroeder, supra.* We therefore hold that the provisions of said section 499 regarding the designation by the collector of merchandise for examination for purposes of appraisement are mandatory.

The next question to be considered is whether the failure to examine a lesser number of barrels than one of every ten barrels of the merchandise here involved rendered the appraisement void. By subdivision (a) (1) of section 500 of the Tariff Act of 1922, hereinbefore quoted, it is made the duty of the appraiser to appraise the merchandise by ascertaining or estimating the value thereof by all reasonable ways and means in his power, and by subdivision (d) of said section it is made the duty of the examiner to examine and inspect the merchandise and report the value and such other facts as the appraiser may require in his appraisement or report. Having held that section 499 is mandatory, we are of the opinion that there can be no valid appraisement of merchandise where there has not been examined at least one package of every ten packages of the merchandise in any importation.

In the case at bar all of the merchandise was designated for examination. Whether under such designation it was necessary that every package of merchandise be examined in order that there be a valid appraisement we need not here determine; but it clearly was necessary that at least one package of every ten packages of merchandise be examined, for the fair construction of section 499 is that Congress deemed that there could not be presumed to be a fair appraisement of imported merchandise unless there was an examination of at least one package of every ten packages of such merchandise. Inasmuch as the Customs Court, Second Division, found that less than one package of every ten packages was examined for purposes of appraisement, and such finding was clearly warranted by the evidence, we are constrained to hold that the appraisements involved herein, made by the

local appraiser, were void. We think this conclusion is supported in principle by the cases of *Converse* v. *Burgess*, 18 How. 413; *Stein* v. *United States*, 1 Ct. Cust. Appls. 36, T. D. 31007;.and *Loeb* v. *United States, supra*.

Under the later decisions of this court it is now well settled that an importer upon appeal to reappraisement may make the contention that an appraisement is void, and if he is successful in sustaining such contention he is entitled to a judgment by the reappraisement court adjudging that the appraisement made by the local appraiser is void. *United States* v. *Tampa Box Co.*, 15 Ct. Cust. Appls. 360, T. D. 42561; *United States* v. *Porto Rico Coal Co.*, 17 C. C. P. A. (Customs) 288, T. D. 43716; *United States* v. *R. R. Rogers Chemical Co.*, 18 C. C. P. A. (Customs) 45, T. D. 44024; *Innis, Speiden & Co.* v. *United States*, 19 C. C. P. A. (Customs) 1, T. D. 44789; *United States* v. *Allenby & Co.*, 20 C. C. P. A. (Customs) 80, T. D. 45703.

For the reasons stated our conclusion is that if appellee was entitled to appeal to reappraisement in the case at bar the judgment of the court below affirming the decision of the single judge should be affirmed.

The Government contends that appellee's appeals to reappraisement were not valid under the provisions of section 501 of the Tariff Act of 1922, hereinbefore quoted, and that the Customs Court, sitting in reappraisement, had no jurisdiction to entertain the same. In support of this contention the Government relies particularly upon the provision of said section reading as follows:

\* \* \* No such appeal filed by the consignee, or his agent, shall be deemed valid, unless he has complied with all the provisions of this Act relating to the entry and appraisement of such merchandise. \* \* \*

The pertinent portions of section 484 of said act, relating to the entry of merchandise, read as follows:

SEC. 484. ENTRY.—(a) Except as provided in sections 490, 498, 552, and 553 and in subsection (d) of section 315 of this Act, the consignee of imported merchandise shall make entry therefor either in person or by an agent authorized by him in writing under such regulations as the Secretary of the Treasury may prescribe. Such entry shall be made at the customhouse within forty-eight hours, exclusive of Sundays and holidays, after the entry of the importing vessel or report of the vehicle, or after the arrival at the port of destination in the case of merchandise transported in bond, unless the collector authorizes in writing a longer time.

(b) No merchandise shall be admitted to entry under the provisions of this section without the production of a certified invoice therefor, except that entry may be permitted if—

(1) The collector is satisfied that the failure to produce such invoice is due to causes beyond the control of the person making entry;

(2) Such person makes a verified declaration in writing that he is unable to produce such invoice and (A) files therewith a seller's or shipper's invoice, or (B) if he is not in possession of a seller's or shipper's invoice, files therewith a statement of the value, or the price paid, in the form of an invoice; and

(3) Such person gives a bond in a penal sum to be fixed by the Secretary of the Treasury for the production of such certified invoice within six months, and the payment of the penal sum so fixed as liquidated damages in the event such invoice is not so produced.

(c) The consignee shall produce the bill of lading at the time of making entry, except that

(1) If the collector is satisfied that no bill of lading has been issued, the shipping receipt or other evidence satisfactory to the collector may be accepted in lieu thereof; and

(2) The collector is authorized to permit entry and to release merchandise from customs custody without the production of the bill of lading if the person making such entry gives a bond satisfactory to the collector, in a sum equal to not less than one and one-half times the invoice value of the merchandise, to produce such bill of lading, to relieve the collector of all liability, to indemnify the collector against loss, to defend every action brought upon a claim for loss or damage, by reason of such release from customs custody or a failure to produce such bill of lading and to entitle any person injured by reason of such release from customs custody to sue on such bond in his own name, without making the collector a party thereto. Any person so injured by such release may sue on such bond to recover any damages so sustained by him.

Article 258, Customs Regulations of 1923, in force at the time of the entries herein involved, so far as pertinent to the question here involved, reads as follows:

ART. 258. *Requirements on entry.*—Such entry shall be signed by the consignee, or his agent, and shall set forth such facts in regard to the importation as the department may require for the purpose of assessing duties and to secure a proper examination, inspection, appraisement, and liquidation, and shall be accompanied by such invoices, bills of lading, declarations, certificates, and documents as are required by law and regulations promulgated thereunder.

Entries shall be in writing according to prescribed forms, signed and declared to. They shall show the name of the importing vessel or other carrier; the port or place of departure and the date of arrival; the place, date, and consular number of the certified invoices; the marks, numbers, and number of packages, or the quantity and the kinds of merchandise described in terms of the tariff act; also the rates of duty, the separate value at each rate, and the total value of the merchandise, with additions or deductions, if any, to make value, as defined by law.

The merchandise shall be enumerated and described, and the values and quantities given in the entry or in a statement attached thereto, in accordance with prescribed statistical schedules.

The Government claims that appellee failed to comply with the provisions of the act relating to the entry and appraisement of such merchandise in the following particulars: That one Dworykin, described as seller in the invoices which bear his signature, and whose affidavit was received in evidence upon the trial before the single judge, knew at all times that the market value of koshered meat specially prepared was an average of 1 cent per pound higher than the value of nonkoshered meat, while, in spite of this knowledge, the invoice price was for nonkoshered meat, and the invoices do not show that the meat was koshered. The Government therefore contends that the value and quality were not revealed by the invoices

upon which the entries were made by appellee, a customs broker. An examination of the entry papers shows that they were made in the usual form, with the usual declaration of the importer, in this case the appellee, Davis. Appellee introduced the testimony of the deputy collector and acting appraiser at the port of Ranier, Minn., one Jesse A. Rose, and the Government introduced the testimony of one Henry A. Roberts, a customs agent at Winnipeg, Manitoba. Mr. Roberts testified that he made an investigation of the shipments of the merchandise here in question and that, if there was any false invoicing, the shipper, Dworykin, so far as he knew, was the only man responsible therefor, and that, so far as he could find out, appellee had no part in the invoicing.

While it is true that the entries do not show the marks, numbers, and number of packages of merchandise as is required in invoices, it should be observed that subdivision (d) of said section 484 of the tariff act requires that the entry shall set forth such facts in regard to the importation as the Secretary of the Treasury may require for the purpose of examination, inspection, and appraisement. We must, therefore, look to the customs regulations to ascertain what facts respecting the importations were required to be set forth in the entries. In article 258, *supra*, it is provided that the entry shall show the—

marks, numbers, and number of packages, *or the quantity and the kinds of merchandise described in terms of the tariff act.* (Italics ours.)

The entries do describe the quantity and the kinds of merchandise substantially in terms specified in paragraph 706 of the Tariff Act of 1922. Koshered beef, as distinguished from other beef, is nowhere described in that act. The entries also show the rates of duty claimed by appellee, the separate value at each rate, the total value of the merchandise, and other facts as required by said article 258.

It therefore appears to us that this is a case primarily of undervaluation of the imported merchandise.

If an incorrect statement of value in an entry bars an importer from an appeal to reappraisement as the Government seems to contend, then in every case where the appraiser advances the entered value the Customs Court would have no jurisdiction to entertain the appeal unless it found the entered value to be the proper appraised value. In other words, under the Government's theory an importer could secure no relief if the court found upon reappraisement that the appraised value was less than that fixed by the local appraiser but more than the entered value, and in such case the court would be compelled to dismiss the appeal to reappraisement for want of jurisdiction upon the ground that the importer had not complied with the law requiring the entry to state the value of the merchandise imported.

We do not think that jurisdiction of the court upon reappraisement is dependent upon a *correct* statement of the value of the merchandise

imported, either in the invoice or the entry; that is, if the importer has complied with the law in all other respects, the fact that the imported merchandise may have been undervalued in the invoice or entry does not deprive the court, upon appeal by the importer to reappraisement, of jurisdiction to entertain the appeal and find the proper value of the merchandise.

We therefore hold that there was no want of jurisdiction to entertain appellee's appeals to reappraisement.

For the reasons stated herein the judgment of the United States Customs Court, Second Division, is *affirmed*.