MARKS CO. ET AL. *v.* UNITED STATES (No. 2235).[1]

1. CONSTRUCTION OF TREATIES.

Treaties are to be construed liberally and according to the intention of the parties thereto; and the language used in them is to be interpreted by the same process of reasoning and by the same rules of construction as are applied to the interpretation of contracts between individuals.

2. CONSTRUCTION, ARTICLE 2, CUBAN RECIPROCITY TREATY OF 1902—"PRODUCT OF THE SOIL OR INDUSTRY."

In article 2, Cuban reciprocity treaty of 1902, according a duty discount to any "product of the soil or industry of the Republic of Cuba," the word industry was not used in a general sense, but to distinguish a product of manufacture, industrial arts, or mechanical activities from a product of agriculture, or from that which owes its existence to growth and development in the soil. Sugar cane is a product of the soil, but sugar, raw or refined, is a product of industry.

3. CUBAN SUGAR, REFINED IN CANADA.

Without deciding whether or not merchandise must be imported directly from Cuba in order to entitle it to the duty discount given by article 2 of the Cuban reciprocity treaty of 1902 to products "of the soil or industry" of Cuba, Cuban sugar refined in Canada and imported from there is the product of *Canadian and Cuban* industry, and not being exclusively *Cuban*, can not claim the duty discount.

United States Court of Customs Appeals, February 9, 1924.

APPEAL from Board of United States General Appraisers, Abstract 45479.

[Affirmed.]

*Sylvanus George Levy* for appellants.
*William W. Hoppin*, Assistant Attorney General, for the United States.

[Oral argument October 17, 1923, by Mr. Levy and Mr. Hoppin.]

Before MARTIN, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges.

HATFIELD, Judge, delivered the opinion of the court:

The merchandise the subject of this appeal is refined sugar. It was imported into this country from Canada and assessed for duty

---

[1] T. D. 40031.

by the collector under the provisions of paragraph 177 of the tariff act of 1913.

The importers protested the assessment and contended that the merchandise should have been admitted at a reduction of 20 per cent of the regular rate provided for in paragraph 177, in accordance with the provisions of article 2 of the Cuban reciprocity treaty entered into in 1902 by the Governments of the United States and the Republic of Cuba, and in accordance with paragraph B, section IV of the tariff act of 1913.

Article 2 of the treaty reads as follows:

2. During the term of this convention all articles of merchandise not included in the foregoing article 1 and being the product of the soil or industry of the Republic of Cuba imported into the United States, shall be admitted at a reduction of twenty per centum of the rates of duty thereon as provided by the tariff act of the United States approved July 24, 1897, or as may be provided by any tariff law of the United States subsequently enacted.

Paragraph B of section IV of the act of 1913 provides—

That nothing in this act contained shall be so construed as to abrogate or in any manner impair or affect the provisions of the treaty of commercial recriprocity concluded between the United States and the Republic of Cuba on the eleventh day of December, nineteen hundred and two, or the provisions of the act of congress heretofore passed for the execution of the same except as to the proviso of article eight of said treaty, which proviso is hereby abrogated and repealed.

The Board of General Appraisers overruled the protest and the importers appealed.

It appears from the record in the case that certain raw sugar, which it is admitted was the product of Cuba, was shipped from Cuba and imported into Canada at the port of St. John, New Brunswick. The Canadian duties were paid thereon and it thereupon entered the commerce of Canada. Thereafter it was refined in Canada and the refined sugar was imported into the United States. The Canadian duty paid upon the raw sugar at the time of its importation into Canada was refunded by the Canadian Government upon the importation of the refined sugar into the United States.

It is contended by the importers that the importation in question is the product of the soil or of the industry of the Republic of Cuba, and being imported into the United States, is entitled to a reduction of 20 per cent of the regular rate of duty provided for in paragraph 177, under the provisions of article 2 of the Cuban reciprocity treaty. The importers take the position that it is immaterial and of no consequence whether the merchandise is imported directly from Cuba into the United States, provided the merchandise is the product of the soil or industry of Cuba, and it is contended that the terms of article 2 support this view.

The treaty under consideration is a reciprocity treaty between the United States Government and the Government of the Republic of

Cuba. No other country is mentioned therein and no other included within its terms. The treaty must be construed liberally and according to the intention of the parties thereto; and the language used therein is to be interpreted by the same process of reasoning and by the same rules of construction as are applied to the interpretation of contracts between individuals.—Tucker v. Alexandroff (183 U. S. 224).

The language employed in article 2 of said treaty is explicit and unequivocal. The articles of merchandise included within its limitations are all those not included in article 1 of the treaty " * * * and being the product of the soil or industry of the Republic of Cuba imported into the United States * * *."

It seems perfectly clear that merchandise, in order to come within the provisions of article 2, must necessarily be the product of the *soil* of Cuba or the product of the *industry* of Cuba, and failing to come within the plain meaning of those terms, is not entitled to admission into the commerce of this country at a reduction of 20 per cent of the regular rate of duty thereon, even though the article is imported into this country *directly* from Cuba.

Accordingly, the first proposition to be determined in this case is, whether the importation under discussion is the product of the soil or of the industry of the Republic of Cuba. If the answer to this proposition is in the affirmative, we must then determine whether it is necessary that the article be imported into the United States directly from Cuba in order to be entitled to receive the preferential rate provided in the treaty.

It is admitted in this case that the raw sugar imported into Canada directly from Cuba was the product of Cuba, without reference as to whether or not it is the product of the soil of Cuba or of the industry of Cuba.

The word "soil" is defined to mean "the face or surface of the earth or ground."

The word "industry" is defined to mean, generally, "constant application, intelligent effort, diligence, etc." And therefore, speaking generally, a thing which is a resultant of intelligent application and diligence is the product of industry.

However, "industry" is also defined to mean "a particular form or branch of productive labor; a trade or manufacture." (Oxford Dictionary.)

And in Funk & Wagnalls New Standard Dictionary it is defined to mean "The mechanical and manufacturing activities as distinguished from the agricultural."

See also volume 31, Corpus Juris, page 974.

A very interesting discussion of the various interpretations that may be given to the word "industry," according to the context in

which it is used, may be found in the People, plaintiff and respondent, *v.* Gillies and Woodward, defendants and appellants (20 Porto Rico Reports, 467); and also in People, plaintiff and appellee, *v.* Beauchamp, defendant and appellant (25 Porto Rico Reports, 559).

The word "industry" in the treaty under discussion was not intended to be used in a general sense, but on the contrary has definite and particular application. It is there used to distinguish a product of manufacture, industrial arts, or mechanical activities from a product of agriculture, or from that which owes its existence to growth and development in the soil.

Sugar cane, from which raw sugar is manufactured, is a product of the soil and is fully and completely developed without the application of any industrial process within the meaning of the treaty; but by the employment of a mechanical or manufacturing process, that is to say, by the application of industry, the cane is crushed, its juice is extracted therefrom, and thereafter is reduced to raw sugar. The sugar cane, it seems to us, so far as the principles involved in this case are concerned, has ceased to exist as such and the juice extracted therefrom has also ceased to exist, and as a result of the mechanical or manufacturing process we have a new, distinct, and entirely different thing, an entirely new product and commercial commodity. Therefore the raw sugar so manufactured and produced from the sugar cane by a complicated mechanical and manufacturing process, involving the use of machinery and labor *applied to* the *product of the soil*, can not be said to be a product of the soil within the meaning of the language of article 2 of the treaty, nor can it be said to be partly grown and partly manufactured, but on the contrary is a product of industry.

Accordingly, if the sugar cane is produced in Cuba it is the product of the soil of Cuba, and if the raw sugar is produced in Cuba it is the product of the industry of Cuba.

Refined sugar, such as the importation included in this case, is produced from raw sugar by a complicated process of industry and is, of course, like raw sugar, the product of industry rather than a product of the soil.

According to the record in this case the raw sugar was produced in Cuba, imported from Cuba to Canada. It entered into the commerce of Canada, was refined in Canada by the industry of Canada, and thereby converted into refined sugar. It certainly must be considered that the purpose in refining the raw sugar was to make it an article commercially superior to the raw sugar, and that the raw sugar, which was the product of the industry of Cuba, had ceased to exist as such. It had lost many of its commercial characteristics and had been advanced, by means of a process of manufacture in

Canada and exclusively by the industry of Canada, into a commercial commodity having additional values, serving different purposes, and having a different name. But it is argued by the importer that it remained sugar, and therefore was the product of Cuba. However, it must be observed that while refined sugar is sugar and raw sugar is sugar, it does not follow that refined sugar is raw sugar. Its very name indicates the contrary to be the fact.

It follows that the refined sugar imported from Canada into the United States was not the article that was exported from Cuba, and that the refined sugar was not the product of the industry of Cuba, but on the contrary was the product of the combined industries of Cuba and Canada.

We think that an article of merchandise, in order to be included within the terms of the treaty, must be the product of the soil or industry of the Republic of Cuba exclusively, and that an article which is the product of the combined industries of Cuba and Canada is not included within the terms of the treaty. The reciprocity treaty was between the United States and the Republic of Cuba, and its provisions extended to these countries only, and it seems clear that the provisions thereof do not include the importation in question, which is as much the product of the industry of Canada as it is the product of the industry of Cuba.

It is argued by the importer that paragraph O, section IV of the tariff act of 1913, referred to as the "drawback" law, and the administration thereof by the customs authorities should be considered in determining the question of whether the importation can be said to be the product of the soil or industry of Cuba.

Paragraph O of section IV of the tariff act of 1913 provides as follows:

That upon the exportation of articles manufactured or produced in the United States by the use of imported merchandise or materials upon which customs duties have been paid, the full amount of such duties paid upon the quantity of materials used in the manufacture or production of the exported product shall be refunded as a drawback, less 1 per centum of such duties  *  *  *.

After careful consideration of the provisions of paragraph O of section IV, it seems to us that a proper interpretation of article 2 of the reciprocity treaty does not involve an interpretation or construction of the provisions of paragraph O of section IV of the act of 1913, nor a construction of the administrative acts of the customs officials in connection therewith.

Having determined that the importation was not the product of the soil or industry of the Republic of Cuba, within the meaning of the provisions of article 2 of the reciprocity treaty, it is unnecessary to decide the other questions presented by the record.

The judgment of the Board of General Appraisers is *affirmed.*

CONCURRING OPINION BY JUDGES BARBER AND BLAND.

The refined sugar, as imported from Canada, is clearly not the product of the soil of Cuba for the very good reason that it has had added to it the result of complicated industrial efforts in the Republic of Cuba *and in the Dominion of Canada.* It is clear also that it is not the product of the industry of Cuba, since complicated industrial effort in Canada has been applied in the refining process. Being neither a product of the soil nor of the industry of Cuba, nor of both combined, it is not entitled to the benefit of the provisions of the Cuban treaty, and the judgment of the Board of General Appraisers ought to be *affirmed.*

We are, however, unable to concur in all the reasoning set forth in the opinion of the majority.